On behalf of the appellant, Ms. Mary Wood, on behalf of the appellant, Mr. Scott Paulson. Good morning, Your Honor. Counsel, may it please the court. Maybe you could pull the microphone down just a tad. Is that better? That's much better, thank you. Thank you. Your Honors, this matter is here today on appeal from a decision of the 17th Circuit in Winnebago County granting petitioners motion to adjudicate respondents' attorney's lien, essentially extinguishing and adjudicating to zero the firm, Kim McCloskey & Associates, the firm's attorney lien in a case. I believe that the court erred in its interpretation of the Illinois Attorney's Lien Act as invalidating the firm's attorney's lien, and the court further erred in its interpretation and application of the 1991 Illinois Supreme Court case of Stevenson v. Hawthorne Elementary School by interpreting that case as a basis to invalidate an otherwise valid attorney's lien. Your Honors, the lien act provides that attorneys shall have claims on all, shall have liens on all claims placed into their hands by their clients, and that to perfect those liens, the notices of such liens have to be served on opposing parties in writing by registered or certified mail. Under the plain language of the act, to have a valid lien, you must be hired by a client, you must serve notice of your lien in writing on adverse parties, and it must be by registered or certified mail. In this case, McCloskey & Associates fulfilled those criteria. We were hired by James McFadden to prosecute a personal injury suit on behalf of James' son, Ian. We served notice of those liens on the two adverse parties by certified mail. At the time that James came to the firm, was the firm aware that he was divorced and there was some sort of custodial arrangement between the parties? Yes, the firm was aware that James and his ex-wife, Tara McFadden, or Tara Fuller, pardon me, were divorced. James did not have legal custody of the children, including Ian, but James had visitation rights, his parental rights were certainly intact. But how do you reconcile your position with the Illinois State Bar Association case where technically, well, your opponent is arguing that the contract or any agreement between James and his firm was void based upon his unauthorized, based upon the fact that he was an unauthorized entity? Well, Your Honor, and that's a point of contention here about whether James was unauthorized at the time that he signed this agreement, the fee agreement with the firm or not. And the Illinois State Bar Association case pointed out that contracts are void ab initio in situations where the subject matter of the contract is illegal or where they're barred by statute. And in the Illinois State Bar Association case, as a matter of fact, that contract was held to not be void. It was simply voidable at the discretion of one of the parties involved. Were there arguments void ab initio based upon the fact that he had not paid child support in how long? He hadn't really had visitation with his children in how long? Your Honor, I don't believe that there was any allegation that James had not been visiting with his children. He was delinquent in child support at this time. Substantial? Yes, yes, that's true. And the Stevenson case was a significant case in the lower court's 2007, September 2007 decision that based on that child support delinquency, James would not be allowed to break suit on behalf of Ian. However, Stevenson, it's important to note what Stevenson doesn't stand for. Stevenson does stand for the court's decision to reject respondents' attempts to distinguish, actually distinguish the circumstances of our case from Stevenson. And, you know, the court, it was within the court's discretion to make that decision. But Stevenson does not stand for the proposition that the complaint filed by a respondent in the underlying suit was improper or was unauthorized. And in the Stevenson case, they, in fact, did not hold that the father's complaint was unauthorized. It was dismissed only as duplicative because the mother also filed a separate complaint in that case. In this case, that's not true. The complaint filed by McCloskey & Associates was simply amended to switch the parents' names. And that complaint, that form, that complaint stood as the legal basis for this case, you know, during the entire pendency of the case. Well, what would be the difference if the complaint stood or it was dismissed and then the attorney for the wife files a new complaint? I guess I'm not seeing, are you saying that that would justify fees on behalf of your client? Well, what I'm saying is that the Stevenson case, the Stevenson court never held that the father was not authorized or was somehow improper to file his complaint and then argue for his position, you know, to prosecute the case on behalf of the child. And more importantly, the Stevenson case, nowhere in that case does it say that this decision in any way acted to invalidate an otherwise valid attorney lien filed by the father's attorney. So if we assume then that, okay, we buy or we accept your theory on the attorney lien, how do you reach the fee that you reached? Your Honor, the lower court never addressed the issue of what the value, the reasonable value of the firm's services was. So are you submitting that we would just decide whether it's a valid or not valid and send it back for the court to reach it? Yes, Your Honor, that's exactly what I'm saying. The court specifically, the lower court specifically said, I'm not going to reach the quantum merit argument because I don't have to reach it. I find that the lien was not valid and under Stevenson, the lien wasn't valid. Under the lien act wording, the lien wasn't valid. I don't have to reach the quantum merit argument. Let's go back to Stevenson, though. There's some specific language in Stevenson that seems to fly in the face of your basic argument. And it says, the father cannot maintain an action as next friend of the child and at the same time defend himself against the child judgment creditor. The conflict of interest is obvious. In addition, the best interest of the child would not be served by allowing a parent who is contemptuously delinquent to prosecute a tort claim as next friend. Now, that's pretty strong language. I agree that it is strong language. However, and this was pointed out to the lower court at the motion to adjudicate, the hearing on that motion, our firm made attempts to distinguish our facts from that case. And I think the strongest argument we had at that time, albeit it was unsuccessful at the time, but the strongest argument was that when James came to Attorney McCloskey, he said, my ex-wife and I both agreed that this suit needs to be filed. Tara said that if she hadn't done anything by September 1st, that I would go ahead and do it. He came in saying that he and Tara had formed an agreement. In other words, it appeared that any conflict had been waived by the agreement between the parents, that one of them would prosecute this suit. Did he tell you, or not you personally, but your firm when he came in that, by the way, we have this agreement and a warrant was just issued for my arrest because I owe $21,000 in child support? No, he did not. Well, your firm was aware of the child support obligations, weren't they? I am an employer advising to contact some attorney. Yes, and that was after receiving a letter from Attorney Kelty, who represented Tara Fuller on behalf of Ian McFadden, who was also, to my understanding, Tara Fuller's divorce attorney. That begs the question, if you had no idea, if your firm had no idea that he owed these child support obligations, when your firm learned of the child support obligations, let me back that up, what would make your firm believe that he was entitled to bring this claim on behalf of the child? The conversation with the wife? One thing that, yes, the agreement between the parents, that a conflict can be waived by the person. By the wife? Pardon me? Is that a conflict that can be waived by the wife? Well, if she's waiving it on behalf of the child, since the child, you know, he was 9 years old at the time, I believe, or just short of 10 years old, he wouldn't have been allowed to sign a contract on his own behalf, but I believe that if Tara could sign a contract on his behalf, she could also waive a conflict on his behalf. Well, we can see that there's a line of demarcation here, and that is the receipt of this letter on, I believe it was 9-6. I mean, what happened before that, my question regarding the filing of the complaint and what the attorney did before receiving the letter, we have certain requirements to file as an ex-friend. And those requirements are no conflict of interest, best interest of the child. Is it incumbent upon an attorney to make inquiry as to whether or not there's a conflict? Because it appears that the attorney made no, according to the record here that I've seen, made no inquiry regarding any conflict that the child would have with the dad. Well, Your Honor, you know, based on what James said, there appeared to be no conflict between the parents. There appeared to be an agreement between the parents about this representation. Based on an early conversation with opposing counsel, there also appeared to be a possibility of cooperative representation, although I know that's being denied now. It was a very short time period that elapsed between James coming in, signing the retainer agreement. There were strategic reasons for filing the complaint at the earliest possible moment related to getting injunctions to avoid destruction of any evidence. There was a municipal defendant, which obviously that's a one-year statute of limitations. There was the issue of getting discovery out to make sure there were no additional defendants that no one knew about. So a suit was filed. We got the letter. What about after that? Yeah. Isn't your client proceeding at its own risk, it being the law firm's own risk, when it receives a letter saying there is this child support obligation? We're coming in. We don't want you to represent the child anymore. There's a conflict. And apparently the attorney withdrew from the children thereafter. Any work that's done after 9-6, how do you have a claim to that? Well, Your Honor, the work that was done after 9-6 was, you know, in response to the letter, our firm stopped doing anything that would involve contacting witnesses or, you know, going out there and saying, hey, we represent this child. However, we did background work. We did foundational research in anticipation that the complaint could possibly be attacked, you know, via a motion to dismiss. We gathered photographs. I really don't care what you did. I want to know why didn't you do it at your own risk that you're doing this. I mean, what you did is immaterial. But when you get the letter on 9-6, anything you do after that, how does the lien cover that? Your Honor, it's for the court to determine what is the reasonable, the lower court to determine what's the reasonable value of any work that we did in this case. We argue that it was valuable. The lien existed based on fulfilling the criteria of the lien act. There is no case that holds that a parent disqualified from acting as next friend of a child, that that parent's attorney no longer has a valid attorney lien. There is no case that holds that an adjudication of lack of standing to represent a party retroactively invalidates an otherwise valid attorney lien. But if the premise upon which the lien is filed cannot exist, or at least that's for purposes of this argument, that James could not bring this lawsuit, then how is the attorney's lien valid? Well, Your Honor, the decision that James could not bring the lawsuit was made several weeks after a motion was filed by opposing counsel. And it was made after a contested hearing and the court's, you know, deliberate consideration of both arguments. There is nothing saying that a party cannot make a reasonable attempt to distinguish its facts and to say, yes, I understand, you know, that these are the facts of this case. I think it's different here. There, I cited numerous cases where parties made arguments that were, that the court did not believe were persuasive or that were unsuccessful. But if the court believed there was any objectively reasonable basis for making those arguments, those were sanctions-related cases. I see I'm out of time, but if I could finish. Okay. Those were sanctions-related cases, but I cited those cases for analogy because, frankly, Your Honors, there are no cases that are directly on point to this very issue. In those cases, the courts said no sanctions are warranted because despite, you know, being unsuccessful, there was an objectively reasonable basis here. And I think the Dyer case that I cited is right on point. I won't go into detail if I'm out of time. You'll have time on rebuttal if it comes up again. Thank you. Okay. Thank you. Mr. Calkins. Thank you, Your Honor. Your Honors, in this case, there was one issue that was before the trial court on the petition for adjudication of lien, and that's whether Mr. McCloskey had an attorney's lien. If that issue was decided against Mr. McCloskey, the case was over in terms of the petition for adjudication of lien. Your attorneys, ladies, the subject matter jurisdiction of the trial court with respect to the issue of the petition to grant lien was simply to adjudicate, one, whether there was a lien, and if they found that there was a valid lien, then to move on to determine what the value of that lien is. In other words, what should be covered. Why wouldn't there be a lien if, as your opponent states, there was a conversation between the spouses or the parents of the child that, you know, if I don't file it within a certain period of time, you can file this in a certain period of time? Your Honor, assuming that that type of conversation occurred, and I don't believe that's in the record, and I certainly don't have any firsthand knowledge that such a conversation occurred, but even if that occurred, it's not the parent's responsibility to protect the child. The case law is clear that says it's the courts that has this special duty to protect the minor child. Sure, but if the mom doesn't file on behalf of the child, and you're looking at statutes of limitation, who's acting in the best interest of the child? Not the mother if she's not filing, correct? Correct, Your Honor. So wouldn't the father have a duty to step in and then go forward with some type of a suit to preserve the statute for the child? Your Honor, I believe there may be a set of circumstances in which that would exist, but remember that the statute with respect to child is not simply the statute or the limitations that relates to the rest of the world, but it's after the child turns 18, it preserves that right of action for a period of time. Sure, but you're not going to preserve the evidence if you wait until a year after the child turns 18, correct? I understand. I agree with that. Since the child is almost 10, and based upon the settlement or resolution, there may have been some injuries, who's going to pay for that in the meantime? I mean, that's not the set of circumstances that exists here. Correct. And so what you're saying is, although counsel has introduced that there was this agreement, you are not aware of this agreement? I'm not aware of the agreement, and nor am I aware of any indication from any court that says a parent has a right to waive this conflict of interest. It's just not within their authority. Now, granted, I agree that Mr. McFadden could have come in and filed a lawsuit if need be, if a suit had not been filed in a reasonable period of time, and in order to preserve the statute of limitations, that may be the case, but then the court would have an obligation to step in and say, okay, Mr. McFadden, you filed the statute of limitations. Mom, she seems to have not filed. It's in the best interest of the child that this case move forward, but you are disqualified, and you are disqualified when you file the case to pursue it on behalf of the minor child. Therefore, I'm going to appoint, like the court did in Stevenson, although ultimately found to be incorrectly, a third party to serve as the guardian for purposes of that. That's why we have the guardians. Why wasn't it a valid lien up until that time? The argument isn't that the filing of the suit was void because, as you indicated, if nobody complained, this father would have been able to bring the suit and would have gone to completion. It wouldn't have been a void judgment. It would have gone to judgment, correct? Correct. So, I mean, it was void of all. It was attackable on the conflict of interest. Once the attorney became aware of this conflict of interest, then perhaps the attorney proceeded on to work on the case at his own peril. But up until that point, wasn't there a valid lien from 94 to 96? There is not, Your Honor. Remember, the lien is based upon a contract, an attorney-client relationship, and the lien intends to allow an attorney to collect a fee based upon a recovery had for a particular client. In this case, Ian McFadden is, for all intents and purposes, the client. He's the injured party. He's the one that's being compensated for his injuries. Mr. McFadden, James McFadden, could not enter into a valid contract with Ian because Ian can't. Ian could contract. It's a necessity of life in terms of a personal injury suit. So Ian could have contacted Mr. McCloskey and retained him, in which case the contract may or may not have been voidable. But James McFadden could not have contacted Mr. McCloskey and entered into a contract that's binding upon Ian. He couldn't do that because it's disqualified. But did they know that at the time prior to the 6th of September? The fact that they weren't aware of that, would that not have some bearing on whether or not they're entitled to collect fees? It would not, Your Honor. I mean, you're either qualified or you're disqualified. I mean, I kind of think about pregnancy, and, you know, I don't need a doctor to tell me my wife's pregnant. You know her, you don't know her, even until the doctor tells you she's still pregnant. Same with this case. He's either qualified or disqualified as of the date that he has that adjudicated contemptuous delinquency. So you don't believe there's any manner, any theory at all, whereby the respondent can collect fees? I believe the respondent can collect fees. I don't think he can collect fees out of the personal injury settlement. I think that Mr. McFadden, in recalling that the initial complaint that was filed by Mr. McCloskey's office included not only an account on behalf of Ian, but also a personal account under the Family Expense Act. So he was retained theoretically, Mr. McCloskey was, by Mr. McFadden to pursue that claim. Mr. McFadden had every right to do so. Mr. McFadden, to the extent that the lien is not proper with respect to that, I think Mr. McCloskey has a right to go file a lawsuit against Mr. McFadden and claim under a quantum merit theory, under a breach of contract theory or whatever, other common law theory may be available. He just doesn't have a lien act theory. Well, of course, the other problem with that is that's like throwing a good time after bad because we know he owed, at the time, about $22,000 in child support. So why would he do that? Let's go to one of Justice Burke's questions, if I may steal it from him. When a client walks in the door and gives you some information, I mean, the red flag flying in my face here is we're divorced. And if this agreement, you know, if there is a conversation about we have this agreement, doesn't an attorney still have some sort of an obligation to maybe check these facts to make sure that when that complaint is signed he's not opening himself or his client up for sanctions or discipline? I believe he does, Your Honor. I believe every attorney, when a client walks into your office, assumes certain obligations. It assumes the obligation to determine, one, whether the prospective client has a culpable cause of action, and, two, whether the prospective client has a right or the ability or the authority to pursue that cause of action. In this particular case, there was a red flag that should have gone off saying I have a noncustodial parent in my office. In the world of divorce law, that means a lot. In divorce law, it's the custodial parent that kind of makes the day-to-day decisions. And courts have said, you know, one of those day-to-day decisions is whether or not to file a lawsuit. So I've got to be thinking in my mind as a personal injury attorney when that client comes in, do I have the right representative here and do some factual investigation? The investigation wouldn't have taken much because Mr. McFadden had been delinquent in child support under the facts for a significant period of time. He was adjudicated as delinquent back on July 18, 2007. So a simple search of the online court records would have showed that, in fact, Mr. McFadden is delinquent, and that appears in the Order to Subtle Cause of Action and Exhibits from that 10-15-10 hearing at Exhibit A. So it shows us that, yes, these were facts that were discoverable, they were available, they just had to be looked for a little bit. Now, in the case of Mrs. Fuller or Ms. Fuller, she went to probate court. Is there any obligation to become this next friend? Is there any obligation under any set of facts you can think about to do that, or is that just reasonable practice? I think two things. I think, one, it's reasonable practice under these circumstances. We have divorced parents. We have one parent that's filed a lawsuit. Mom is alleging that that lawsuit was unauthorized at that time, that she had selected another attorney for her son. The incident occurred only a few weeks ago. So the appropriate course of action is to go to the probate court and say, hey, we've got a little bit of a dispute here. We've got Dad that wants to file an action. He's got an attorney that's been retained. We think Dad's unqualified for these reasons. We've got Mom. Mom's the custodial parent. She'd prefer to be the one that steps into those actions. Almost as a declaratory judgment, probate court, please decide, and in doing so, appoint somebody as the guardian for purpose of pursuing the action. But Mom is certainly qualified as the custodial parent without any delinquency in child supports or anything else, indicating a conflict of interest that she could have pursued the cause of action without the input of the probate court. But it was a prudent decision to do so, I think. If this attorney had worked this case up all the way to settlement, and then the day before the settlement is reached, then the mom comes in and says, you're not the attorney for me. I'm going to bring in my own attorney. And then the attorney comes in a day later, settles it based on the exact all the work that the person did. Your argument is that that person, that quantum merit under the attorney's lien, cannot take from that estate. Under the Attorney's Lien Act, yes, Judge. I believe there are basis for recovery there. In that situation, if an attorney, number one, files a lawsuit, runs that ball down to the one-foot line, and attorney two comes in and crosses the goal line, it seems to me that there may be a claim saying, hey, there's an intentional interference with some type of business relationship. There might be a common law claim there. There might be an equitable estoppel claim there saying, oh, wait a second. In this set of circumstances, you can't cross the one-foot line and then take the entire fee for this. In this case, that's not what happened. The lawsuit was filed, I think, 14 or 15 days after the injury by Dad. Mom stepped in that same day, filed her guardianship proceedings, informed counsel. Since that time, pleadings were modified, theories of the case were modified. Attorney number two is the one that ran the ball, even though it may be from the one-foot line of the opposing end zone. But we ran it in. The trial court ruled that there was no act under the lien act, no action under the lien act. Is that correct? Correct. And really got no further than that? No further than that. Is there a reason? If we were to find that until that person received notice that there was a problem with the child support, the attorney, that there was potentially a lien during that two- to three-day period, but adjudicating a lien to zero based upon what happened during that two to three days and then, of course, what happened for the next two to three years, that that was not unreasonable. I think there is, and I think for two reasons. One, based upon the arguments that were before the court, really what was done before September 6th was getting a retainer agreement, filing a complaint, and doing some research on strict liability according to what appears in the complaint. So that's an action. Its contribution to the case is not arguably high. Second, on the quantum merit theory, assuming that they have a lien, because we have to have a lien before we get to quantum merit, the burden of proof is still upon Mr. McCloskey's office to establish his services. We do that through evidence. We do that through hearings. The cases that were cited by Ms. Wood in her brief, to the extent that they involved quantum merit claims in the context of attorney fees actions, there were proceedings involving the taking of evidence. In this case, the record before the court shows no such proceedings. They showed up at the petition to adjudicate attorney's lien, and rather than putting Mr. McCloskey on the stand and saying, this is what we did before then, under oath, subjecting him to cross-examination, they argued. Arguments aren't evidence. So the court has no evidence before it upon which it could say any of the factors in determining whether or not a lien or whether quantum merit recovery is appropriate and what amount. It had no evidence before the court to do it. Did the argument go beyond the issue of whether there was a lien at all? It did. It did. I think the record from that hearing indicates that Mr. McCloskey's office testified about what work they claimed to have done. Did he testify? Not testify. I'm sorry. I argued about the work they said they had done. They said they did research regarding strict liability based on alternate hazardous activities on or about September 4th, prepared and filed a complaint, which happened on September 6th, served as summons by a private process server, which they've been paid for, their expenses associated with private process servers, fees have been satisfied. And then not until September 10th did they send preliminary research to district, McCabin investigated to obtain telephone records and did some other work. So we're talking about that limited period of time. Zero was appropriate, one, under the record, and two, under the facts even as argued. Was that complaint that McCloskey's office filed dismissed and refiled? It was not. There was a substitution of the party plaintiff on it. The complaint was then amended the first time on October 31, 2007, and it modified some of the allegations of negligence and then significantly modified after discovery on March 18th of 2010 to again modify the allegations of negligence. If I can go off what the record says just so the Court has a bit of an understanding, this was a case where a tree was felled and a child was injured by a limb that kind of bounced across the street. Initially when the complaint was filed, the thought was, well, there's a rule that talks about a zone of safety. So there's about a 75-foot zone of safety that that's what we worry about is negligence, have somebody in that zone of safety. Well, it turns out Ian was 102 feet from the place that the tree fell. I think the rule is actually two, the tree times two, the height times two. Well, he was outside that zone of safety. So the original complaint, that allegation of negligence wouldn't have held the day. Substantial modifications to the complaint need to be about whether or not the area was appropriately monitored during the time that it fell under the tree, and it's the failure to monitor that hurt Ian. So it changed significantly. When the McCluskey Law Firm left the litigation, did they transfer certain items of their research or documents or things they had discovered in this process, maybe from the 10th through the 17th of September to Ms. Fuller's attorney? Yes, Your Honor. I believe some documents were transferred. I don't believe any of the documents were ultimately used in the case. The documents transferred included a deposition of the manager or the president of Tree Care Enterprise, the defendant in the case, talking about this zone of safety. And some prior injury that had occurred under maybe not the same circumstances but some circumstances. Correct. In another case. Correct. And then some photographs and some maps, and ultimately attorney number two of the law firm, our law firm, ended up getting a survey done and taking different pictures. Was there any compensation offered or paid for the paper? There was compensation paid with respect to actual incurred costs, the process server fees, the filing fees, et cetera, court costs. There was compensation offered in terms of trying to settle this case but not in terms of a specific I got the paper, how about I pay X. Like a court reporter, I got 30 pages, you owe me X amount of dollars. Right. To my knowledge, there wasn't, Your Honor. Right. So if the court has no further questions. Thank you. Ms. Hoots, do you have a rebuttal? Yes, Your Honor. Can I ask a quick question? Can you indicate where in the record this agreement shows up between where it was related to your client, that the husband and the wife had an agreement, that if someone didn't file by a certain time that the other person would file? Yes, Your Honor. That was during oral argument before the lower court, and it was brought to the court's attention at page 13 of the oral argument record. Thank you. But as counsel has identified, there was nobody who was, you know, I swear to tell the whole truth, nothing but the truth, this was argument where certain information might also have been used to support the argument, correct? Yes. And in terms of Mr. McCloskey not being present during this argument, it was noted at the outset of oral argument that Mr. McCloskey extended his apologies for failing to be at the oral argument. He was recovering from surgery that he had recently had, and he wouldn't have been able to be at the oral argument at any rate. The oral argument usually follows fact-finding. There was no fact-finding by this particular trial court, correct? Correct. Correct. Your Honor, I would like to point out in terms of requirements for acting as next friend of a child, there is no requirement that a parent must have legal custody in order to act as next friend of a child. There is no requirement that a parent must first be appointed guardian in order to act as next friend of a child. The Probate Act didn't contain any restriction that would have. But let's then go back to Justice Burke's question, and I keep stealing it from you, I'm sorry, Justice Burke, about what might be reasonable or prudent under these circumstances. Well, under the circumstances, and especially, you know, considering that James did come in saying, you know, this is what my ex-wife and I discussed, this is what we're going to do, it was not unreasonable to take that at face value, even after receiving a letter saying, hey, no, there's a problem between the parents here, now we need to work this out. There were additional bases, I think, for our firm to argue that we were distinguishable from Stevenson. At that time, you know, we argued that the ultimate issue decided in Stevenson was whether the bank versus the mother was actually the proper party to bring suit, and that was the main issue decided in Stevenson. The issue of the father's child support came up as a side issue. It also seemed important to the Stevenson court enough to note it in its written decision that the father, in that case, was employed at the time that his delinquency arose. It was important enough to note that in the decision. James, it's undisputed that he was not employed at the time that his delinquency arose. It was just another factual distinction, you know, ultimately. You don't contest that there was a conflict, though. I mean, Mr. McFadden, not Mr. McFadden, but the attorney withdrew pretty quickly after this was brought to the court, correct? The attorney withdrew after the court determined that Tara was the proper parent to bring the lawsuit, not James. Based on the court's determination after our argument to distinguish that, then yes, absolutely, you know, Attorney McCloskey withdrew, yes. But you agree that there is a conflict under the law as presented in Stevenson? Yes, I agree that that conflict existed, but I don't agree that it is impossible for a conflict to be waived. Counsel says that a parent is not allowed to waive a conflict on behalf of a child, and I don't see any authority saying that that's true. In terms of being disqualified from bringing suit on behalf of a child, that is a judicial determination that's made after the fact. That is not something that an attorney determines on his own at the time a client retains him. But the court would have made a more in-depth inquiry had he filed in probate court as next of friend versus the way he did file through the civil courts. Well, Your Honor, the underlying personal injury action was filed in the law division of the court because that's the standard practice to do it that way. Correct. But you don't have to have a dispute between the parents in order to file as next of friend through probate court, do you? Generally, you wouldn't file the personal injury action in probate court. But you can leave to file as next of friend. Well, according to the Probate Act, a parent can act as next friend without any prior appointment of the court. And so generally, you know, in the many cases where our firm represents a child through a parent, it's filed in the law division. A case is opened in probate court shortly before settlement in order to appoint a guardian ad litem to look over the settlement and to get the court's approval if the child was a minor. I guess my question is if there were any question or any concern with respect to a dispute between the parents, the best place to have gone first would have been probate court, even though it's not the typical practice to file as best of friend, correct? Yes, I understand what you're saying, Your Honor. There would be more inquiry by the probate court than there was through the law division. Well, by the time we were notified that there was any conflict between or disagreement between the parents, the case had been filed in the law division. And we were notified that, you know, Tara has retained counsel. That attorney has moved to dismiss the suit or transfer it to the probate division. Neither of those were granted. However, the court did grant the motion to appoint Tara as guardian and to have her prosecute the suit. And it was at that time several weeks after our firm had been retained. At that time, did your firm contest that, dispute that she was the best party? Yes, and that's what the contested hearing in front of the probate judge was about. And at that time, your firm was aware of the child support obligations. At that time, yes, we became aware of it by, you know, being notified. But you still persisted in being, in representing that James was the proper parent. Well, we made our argument before the probate court and let the court and accepted the court's decision. You know, we were unsuccessful in that argument, but there still was no basis to invalidate our otherwise valid attorney lien. Would you agree that the hearing on the lien was not limited to the validity of the lien? Your Honor, arguments were presented to the court about the reasonable value of our firm's services. But I believe toward the end of the argument, and it may be on page 38 of the record, the transcript of the oral argument, the court said something to the effect of, I'm not going to address the quantum merit arguments because I don't have to. I believe that under the lien, I believe that your lien is not valid. That was it toward the end, though. That was the court. The trial court didn't say, go ahead, we're going to talk about the validity of the lien and nothing else. If we get past it and say it's valid, then we'll talk about the amount. No, the court did not say that. The court heard the full argument, but at the end said, I'm not even going to address the quantum merit because I don't have to. My decision is that the lien is not valid. It's extinguished. Thank you. Thank you. Are there any other questions? No, thank you. Thank you, Your Honor. I thank the counsel for argument. This matter will be decided in due course, and we will stand in recess for a moment to wait for our next argument.